M. YOUNKER, Appellant, *v.* WESTERN UNION TELEGRAPH COMPANY, Appellee.

**Telegraphs:** DAMAGES: RECOVERY BY SENDEE. Under our statute creating a liability on the part of a telegraph company for the negligent transmission of a message, the addressee can only recover of the company such damages as he himself sustains; he can not recover damage sustained solely by the sender.

**Same:** RECOVERY OF DAMAGES BY SENDER. Where a party selects the telegraph as a means of communication he must bear the loss occasioned by error in its transmission, and is bound by the message as delivered to his agent; but he has recourse against the company for damages sustained by him in its negligent transmission.

**Brokers:** DEFINITION. A broker is one engaged in uniting parties in a transaction, or who has authority to transact business for them in matters of trade or commerce; and differs from a factor in that he does not ordinarily have possession of the subject of the transaction and his contracts are always made in the name of his employer.

**Telegraphs:** NEGLIGENT TRANSMISSION: NOTICE OF CLAIM FOR DAMAGES: RECOVERY BY SENDER: SUBROGATION. In this action a broker purchased stocks at a price not authorized by his principal because of the erroneous transmission of a message, and on discovery of the error notified the company pursuant to our statute relating to claims for damages against telegraph companies, and without mentioning the sender, that he would sell the stock and charge the loss, if any, to the company. Upon a sale of the stock and refusal of the company to pay the loss sustained, he presented his claim to the sender of the message who paid the loss without taking an assignment of the claim. The sender failed to notify the company of his claim for damages as required by the statute but relied on the notice given by the broker. *Held,* in this action by the sender of the message against the company that he was not entitled to be subrogated to the rights of the broker under the notice given by him, as the same in no manner

indicated that the claim for damages was made for and on be-half of the sender; and as the statute requires that notice of a claim for damages must be given the company as a condition precedent to a right of action, either by the claimant or someone authorized to act for him, and no such notice was given, he could not recover.

Same: ADOPTION OF SENDEE'S NOTICE: AGENCY. It is also held that as the notice by the broker was for his individual loss and not on behalf of the sender of the message, the sender could not, by adopting the broker's notice, bring himself within the statute on the theory that the broker was his agent.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

TUESDAY, MARCH 15, 1910.

ACTION at law to recover damages for error in the trans-mission of a message sent by plaintiff to his brokers, Logan & Bryan, in the city of Chicago. The defendant denied generally, but admitted that a written notice and claim for damages was given it within sixty days by Logan & Bryan. On the issues joined the case was tried to a jury, resulting in a directed verdict for defendant, and plaintiff appeals.—*Affirmed.*

*B. A. Younker* and *Schenk & Berryhill,* for appellant.

*George H. Fearons* and *Hewitt & Wright,* for ap-pellee.

DEEMER, C. J.—Plaintiff is a resident of the city of Des Moines, and Logan & Bryan are brokers or com-mission men on the Stock Exchange in the city of Chi-cago. On February 21st plaintiff delivered to defendant's agent in the city of Des Moines a telegram for transmis-sion to Logan & Bryan, his brokers, the written part of which, with some of the printing, reads as follows:

The message as delivered to Logan & Bryan read: "To Logan & Bryan, Chgo. Buy one hundred shares American Linseed preferred hundred twenty-seven fifty 2 hundred twenty-five standing order. M. Younker." From the message as delivered Logan & Bryan understood there was no limit placed upon the one hundred shares of preferred, and, instead of buying for thirty, as directed in the message as originally written, they paid thirty-five. Plaintiff alleged in his petition: "That upon learning of defendant's said error, plaintiff by its said agents, Logan & Bryan, entered said stock for the account of the said defendant, thereby giving defendant opportunity to dispose of said stock at the least possible loss to itself. That said defendant refused to accept said stock, whereupon it was sold upon the first market day at the highest price then obtainable, to wit, thirty-three dollars ($33) per share. That, by reason of defendant's said error in transmitting said message, this plaintiff was directly damaged to the amount of two hundred twenty-seven and $^{50}/_{100}$ dollars ($227.50), as follows: Loss of stock, $200.00; commission, buying, $12.50; commission, selling, $12.50; transfers, etc., $2.50—$227.50." It is admitted that plain-

tiff himself gave defendant no notice of his claim, but Logan & Bryan did write the defendant the following, among other, letters:

Chicago, Feb. 21, 1907.    Mr. F. H. Tubbs, Supt. Western Union Telegraph Co., Chicago, Ills.—Dear Sir: We received the following from M. Younker, Des Moines, over your wire to-day: 'Buy one hundred shares American Linseed preferred hundred twenty-seven half two hundred twenty-five standing order.'    On receipt of this message we bought the account of Mr. Younker one hundred American Linseed preferred at thirty-five and wired him over your wires.    We subsequently received inquiry from your Board of Trade office asking for message to which our message was an answer.    The writer personally went to your office and had Mr. Sherwood, the assistant manager, wire to Des Moines as to what was wanted in the original message.    He received in return a duplicate of the original, which read: "Buy one hundred shares American Linseed preferred thirty hundred twenty-seven half two hundred twenty-five standing order.    [Signed]    M. Younker."    You will see that the original message omitted limit at thirty on the first one hundred to be bought.    As we had already bought one hundred shares at thirty-five on market order, which was clearly indicated in the original message, as it did not contain a limit when the following orders did, and were to be made open orders, we requested Mr. Anderson to take up with the Des Moines office, have them see Mr. Younker and try to get him to take the stock at the purchase price.    This the latter refused to do.    Therefore, we have taken the purchase out of Mr. Younker's account and entered same bought for the account of the Western Union Telegraph Co.    In the absence of specific instructions from you before the New York Stock Exchange opens Monday morning, which will be their next session, as to your desires in the matter we shall sell this stock for the account of the Western Union Telegraph Company at the market price and render you bill for the difference if such sale should be made at a lower price than the purchase of to-day, and if there is any profit, of course, we will give it to you.    We enclose herewith memorandum of purchase and send this letter

by registered mail so we will know it will reach you all right.   [Signed] Logan & Bryan.   T. J. B.

Chicago, April 11, 1907.   Mr. F. H. Tubbs, Western Union Telegraph Co., Chicago, Ill.—Dear Sir:   We beg to enclose herewith our check on Corn Exchange National Bank, payable to order of Western Union Telegraph Co. for $5,153.08, in payment of enclosed bill, less $227, amount of our claim against your company, this being loss sustained in executing order to buy one hundred American Linseed preferred on February 21st, as per our letter on that date to you.   In this letter we advised you that we had entered this purchase for account of Western Union Telegraph Co., and advised that same would be sold, in the absence of specific instructions, for the account of the Western Union Telegraph Company, on opening of business February 25th, this being the next business day following the date of purchase.   We beg to enclose the account covering the above transaction.   You may, if you please, kindly receipt and return to us the following enclosed bill.   [Signed] Logan & Bryan.   T. J. B.

After Logan & Bryan had endeavored to collect the amount of the loss from the telegraph company without avail, it rendered plaintiff an account of $227, which amount plaintiff paid on or about August 13, 1907.   Plaintiff never gave defendant a notice of his claim, and, as we understood it, Logan & Bryan never made any assignment of their claim, if they had any, to the plaintiff.   If there be any such assignment, it must be one implied as of law to be found from the facts above recited.   The verdict was directed on the ground that plaintiff gave defendant no notice of his claim as provided by section 2164 of the Code, which reads as follows:   "In any action against any telegraph or telephone company for damages caused by erroneous transmission of a message, or by unreasonable delay in delivery of a message, negligence on the part of the telegraph or telephone company shall be presumed upon proof of erroneous transmission or of

unreasonable delay in delivery, and the burden of proof that such error or delay was not due to negligence upon its part shall rest upon such company; but no action for the recovery of such damages shall be maintained unless a claim therefor is presented in writing to such company, officer or agent thereof, within sixty days from the time cause of action accrues." One other section of the statute is material. It reads in this wise: "The proprietor of a telegraph or telephone line is liable for all mistakes in transmitting or receiving messages made by any person in his employment, or for any unreasonable delay in their transmission or delivery, and for all damages resulting from failure to perform the foregoing or any other duty required by law, the provisions of any contract to the contrary notwithstanding." Section 2163, Code.

At the outset we may as well say that in our opinion there was enough testimony to take the case to the jury upon the proposition that there was an error in the transmission of the message which plaintiff actually delivered to the defendant's agent at the city of Des Moines, and, this being shown, the burden was upon the defendant to prove that the error was not due to defendant's negligence. This latter was also a question for the jury under proper instructions.

The sole question in the case is: Was sufficient notice of the claim given the company as provided by section 2164 of the Code? The notice given by Logan & Bryan was in our opinion sufficient notice of a claim; but the real question is: Was it such a notice as plaintiff may rely upon? If it was, then the verdict was erroneously directed. If, on the other hand, the plaintiff cannot rely thereon, then the case was correctly decided. The statute reads that "no action shall be maintained unless a claim therefor is presented in writing to such company," etc., within sixty days from the time the cause of action accrues. This

1. TELEGRAPHS: damages: recovery by sendee.

notice may be given by the claimant or by one acting for him; or, having been made by a proper party and his rights established, the claim may be assigned to another who may avail himself of the notice. But it is undoubtedly true that notice cannot be given by a stranger or by one having no interest in the claim. Logan & Bryan were not strangers to the transaction, although they may or may not have had a cause of action in their own right. If they alone had a cause of action, or if they or plaintiff at the option of either had a cause of action, and they sought to mature that cause of action, they might assign their claim to another, although perhaps if that other had a cause of action in his own right he might not by taking an assignment avoid any defense which the company had against him. It goes without saying that there could be no double recovery in the case. Plaintiff or Logan & Bryan or both may have had a cause of action, but a recovery by one in the event either might sue would bar an action by the other, unless it appears that for part of the damages defendant was liable to one party and for the remainder to another.

In England, where the action against a telegraph company is regarded as *ex contractu,* the addressee of a message cannot sue no matter what his damages. *Playford v. Electric Co.,* L. R. 4 Q. B. 706; *Dickson v. Renters Tel. Co.,* 2 C. P. Div. 62. Some few American courts follow the English doctrine, but the great majority of them hold that, as a general rule, an addressee may recover the damages suffered by him. The reasons for this rule are substantially as follows: "(1) A telegraph company is a public agency, and responsible, as such, to any one injured by its negligence, or, at least, it is the common agent of the sender and receiver, and responsible to each for any injury sustained by them, respectively, by its negligence. (2) Where the receiver is the beneficiary of the contract, the injury, if any, caused by the company's

negligence, must be to him.    (3)    The message is the property of the party addressed, in analogy to a consignee of goods.    (4)    Where it appears upon the face of the message that the sender is the agent of the receiver, the latter, as the principal, can maintain an action for breach of the contract, or for a tort, if injury is done him by negligence in performance of the duty contracted for." Shearman & Redfield, in their work on Negligence, state the rule as follows: "We think, therefore, upon the principle of these decisions, a telegraph company is responsible for its negligence to a person to whom a message is addressed, as well as to the sender.  If it were not so, it is obvious that the receivers of telegrams would often receive great damage without any means of redress."  In *Western Union Tel. Co. v. Dubois,* 128 Ill. 248 (21 N. E. 4, 15 Am. St. Rep. 109), the court said: "Telegraph companies are the servants of the public, and bound to act whenever called upon; their charges being paid or tendered. They are in that respect like common carriers; the law imposing upon them a duty which they are bound to discharge.  Hence, when the receiver of a dispatch suffers loss from the careless and negligent performance of its duty by such a company, he is entitled to recover damages for the tort, and the proper remedy is an action on the case." Our statute (Code, section 2163) makes a telegraph company liable for all damages resulting from failure to perform its duties, and we have held that an addressee may sue and recover the damages sustained by him.    *Herron v. Western Union Co.,* 90 Iowa, 129 ; *Mentzer v. Telegraph Co.,* 93 Iowa, 752, and cases cited.  But an addressee must show that he suffered some damage in order that he may recover.    If the damages were suffered by the sender alone, the addressee has no cause of action.    *Ayer v. Western Union Tel. Co.,* 79 Me. 493, (10 Atl. 495, 1 Am. St. Rep.

353); *Stewart v. Telegraph Co.*, 131 Ga. 31, (61 S. E. 1045, 18 L. R. A. (N. S.) 692, 127 Am. St. Rep. 205).

These rules are well enough settled both by our own cases and by authorities from other states, and the difficulty as usual is in their application to the facts of the particular case. According to the record before us, plaintiff sent the message to his own broker or agent. He adopted that method of communication with him, and the agent or broker, in fact, suffered no damage, for plaintiff voluntarily paid the loss on the stock and the commissions, and took no assignment of the claim, if any, held by the brokers. The effect of this was to ratify the mistake made the telegraph company in so far as the brokers were concerned. He, plaintiff, cannot recover in virtue of an assignment made to him by his brokers for the reason that he holds no assignment from them. If he may recover at all, it is because he is entitled to the damages suffered by him either as an original proposition or because he has a claim growing out of his relation as principal with his agents or brokers, and may adopt for himself what they did in the way of giving notice of the claim, or by reason of being subrogated to their rights against the company, on the theory that he was primarily responsible for the loss and bound to reimburse his brokers therefor.

Appellant's counsel in argument contend that defendant was plaintiff's agent in transmitting the message to his brokers, and that he, plaintiff, was responsible to the brokers for the defendant's acts. They also argue that it was plaintiff's duty to reimburse Logan & Bryan for any loss they suffered by reason of the error in the transmission of the message. Following these premises to a conclusion, they insist that, as they paid Logan & Bryan the loss they suffered, they became entitled to all the remedies and securities held by these brokers, including their right to sue after having given the required notice.

The fallacy in this argument lies in the assumption that Logan & Bryan suffered a loss which they might have recovered from the telegraph company. If plaintiff became responsible in so far as his brokers are concerned for the errors made by the telegraph company in the transmission of the message because the telegraph company was his agent, then Logan & Bryan never suffered any loss which they might recover from the telegraph company. In other words, if the telegraph company was plaintiff's agent for whose acts he was responsible, his brokers were justified in acting upon the message as delivered to them, and they suffered no loss, for they simply carried out the instructions of their principal. The loss, if any, was that suffered by plaintiff, and there is no question of primary and secondary liability. The liability was to plaintiff alone, and he alone could sue. If that be the situation, then, as plaintiff did not give the defendant any notice of his claim, he can not recover unless he be in a position by reason of his relation to his brokers to avail himself of the notice given by them.

Appellant's counsel cite several cases in support of their proposition which announce the rule that the party who selects the telegraph as a means of communication must bear the loss caused by error in transmission. In other words, the sender is bound by the message which is in fact delivered to his agent and has his recourse against the telegraph company for the damages sustained by him. This is the rule announced in *Western Co. v. Shotter,* 71 Ga. 760, and *Ayer v. Western Union Co.,* 79 Me. 493 (10 Atl. 495, 1 Am. St. Rep. 353), and in the notes to *Cobb v. Glenn Boom Co.,* 110 Am. St. Rep. 742. For the purposes of the case, we adopt this rule. Indeed, it seems to be one already announced by this court. See *Hasbrouck v. Telegraph Co.,* 107 Iowa, 160; *Lucas v. Telegraph Co.,* 131

*2. SAME: recovery of damages by sender.*

Iowa, 669. The former case cites *Reed v. Telegraph Co.,* 135 Mo. 661 (37 S. W. 904, 34 L. R. A. 492, 58 Am. St. Rep 609), which announces the rule contended for by appellant. Recognizing his responsibility to his brokers, plaintiff paid the loss sustained by reason of the erroneous transmission of the message, and now seeks to recover the same in his own right from the telegraph company. There was nothing to which he could be subrogated, for the brokers suffered nothing, and they had no cause of action against the defendant. This view is supported by at least two cases from other courts. One is *Frazier v. Telegraph Co.,* 45 Or. 414 (78 Pac. 330, 67 L. R. A. 319, 2 Am. & Eng. Ann. Cas. 396), where an extensive annotation is to be found, and another is *Rose v. Telephone Co.,* 34 How. Prac. (N. Y.) 308. The case first cited contains an exhaustive review of the authorities. The message in this case was not sent for the benefit of Logan & Bryan, save as they were interested in the commission to be earned, and, as plaintiff was bound by the message delivered to them, they suffered no damage whatever. The loss was plaintiff's, and, as he alone had the right to sue, he must have given the notice required by section 2164 of the Code. He gets nothing by subrogation or by assignment of a claim from Logan & Bryan.

The only ground upon which plaintiff can stand is that as notice of the claim was given by Logan & Bryan, his agents or brokers, he can rely upon that notice, and was not compelled to give one on his own behalf. A broker is one whose occupation it is to bring parties to a bargain or to bargain for them in matters of trade or commerce. He is essentially a middle man or go-between. He differs from a factor, in that ordinarily he does not have possession of the goods, and his contracts are always made in the name of his employer. In other respects he is like ordinary agents,

3. BROKERS: definition.

having only such powers as are actually given or which are implied from those given. Ordinarily, if his principal suffers a loss growing out of the negligence of another agent, he has no duty to perform with reference thereto. So that it can not be said that Logan & Bryan were authorized to serve a notice of plaintiff's claim against the defendant company. A broker does business in the name of his principal, but he may also suffer a loss himself. Doing business in the name of his principal, he must, if he assumes to act for that principal, so declare in what he does, for he may have a right of action in some cases in his own name against a third party.

Looking now to the notice which Logan & Bryan gave the defendant, it will be observed that the claim is made by them in their own name and for damages claimed to have been suffered by them. They make no claim whatever for damages suffered by their principal. In fact, they stated that, as plaintiff refused to be bound, they treated the purchase as being made on defendant's account. They also treated the matter as a personal claim against the defendant, and, while they gave the nature of the transaction, they elected to hold the defendant rather than plaintiff and claimed that the loss was theirs, deducting it from the amount they owed the defendant. This clearly indicates that they were not acting or assuming to act for the plaintiff, and there is nothing in the notice upon which plaintiff can rely. While the statute says that written notice of a claim must be given, this manifestly means that the notice should be given by the claimant, or by one authorized to act for him. It may not be necessary in all cases that it be given in the name of the person injured, but there must be something in the notice to indicate that a claim is being made for him, and not on behalf of some one else. We have no

4. TELEGRAPHS: negligent transmission: notice of claim for damages: recovery by sender: subrogation.

decisions upon this point, but other courts have determined in accord with the views here expressed. See *Western Union Co. v. Beck,* 58 Ill. App. 564; *Swain v. W. U. T. Co.,* 12 Tex. Civ. App. 385 (34 S. W. 783); *Western Union Co. v. Kinsley,* 8 Tex. Civ. App. 527 (28 S. W. 831); *Western Union Co. v. Moxley,* 80 Ark. 554 (98 S. W. 112); *Western Union Co. v. Courtney,* 113 Tenn. 482 (82 S. W. 484); *Russell v. W. U. Co.,* 57 Kan. 230 (45 Pac. 598). As plaintiff failed to give notice of his claim, he can not recover the damages sustained by him.

Even if we should adopt the other theory, that the defendant was not plaintiff's agent and treat the case much as the parties themselves did—that is to say, as if the loss were suffered by Logan & Bryan, and that they had a cause of action therefor—the same result would follow, for the reason that Logan & Bryan made no assignment of their claim to the plaintiff. If plaintiff were a stranger to the transaction, he surely could not recover without an assignment of the claim. And, if he is permitted to recover in his own right, he must give the statutory notice.

5. SAME: adoption of sendee's notice: agency.

Plaintiff filed a motion for a new trial based upon surprise, etc. In this he claimed that he could show that he was bound to reimburse Logan & Bryan for their loss. Even if this were true, it would not change the result. He must recover as assignee of Logan & Bryan or in his own right, and on neither theory may he recover.

We do not wish at this time to do more than decide the exact proposition in the case—that is to say, that plaintiff can not recover because not an assignee of Logan & Bryan, or in his own name because he gave no notice. Whether or not the defendant was plaintiff's agent, or an independent contractor liable to either plaintiff or Logan & Bryan, we do not at this time attempt to determine. For present purposes, we have adopted plaintiff's theory

upon this point without intending to announce a rule upon that proposition.

No error appears, and the judgment must be, and it is, *affirmed.*